# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

JEROME B. REED,                    )
                                   )
             Petitioner,           )
                                   )
      v.                           )        Civ. A. No. 04-326-GMS
                                   )
THOMAS CARROLL, Warden,            )
                                   )
             Respondent.           )

———————————

Jerome B. Reed.  *Pro se* petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of
Justice, Wilmington, Delaware.  Attorney for respondents.

———————————

## MEMORANDUM OPINION

August 26, 2005
Wilmington, Delaware



Sleet, District Judge

## I. INTRODUCTION

Petitioner Jerome B. Reed is a Delaware inmate at the Delaware Correctional Center in

Smyrna, Delaware. He has filed the pending petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254. (D.I. 1; D.I. 9.)   For the reasons that follow, the court will dismiss his petition.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

As stated by the Delaware Superior Court in Reed's post-conviction proceeding, the facts

behind Reed's conviction are as follows:

> The victim in this case was Cecil Bounds, an 86 year-old [] male living alone in
> Delmar. The State alleged that Reed walked up to and forced his way into Bounds' house
> on January 25, 2001. Once inside, Reed demanded money. When Bounds told Reed that
> he only had a few dollars, Reed tied him up and searched the house. Reed found Bounds'
> checkbook and order him to write a check for $600 payable to "cash." Reed and Bounds,
> with Reed driving Bounds' car, then drove to Bounds' bank. The drive-in teller cashed
> the check and gave the money to Reed. Reed then drove Concord and got out. Bounds
> drove home and reported the matter to the police.

> Amazingly, Reed returned to Bounds' house on January 29, 2001. Reed again
> tried to force his way into Bounds' house, but Bounds slammed the front door in Reed's
> face. When Reed went around to the back of the house, Bounds ran out of the front door
> and over to a neighbor's house. A few minutes later, Bounds saw Reed drive his car
> away. Bounds called the police, who arrested Reed later the same day at the Food Lion
> Shopping Center in Laurel. The police found Bounds' car in the parking lot.

*State v. Reed*, 2003 WL 22853417, at 81 (Del. Super. Ct. Aug. 6, 2003).

In October 2001, a Delaware Superior Court convicted Reed of first degree robbery,

possession of a firearm during the commission of a felony, second degree kidnaping, two counts

of second degree burglary, felony theft, theft from a senior, and misdemeanor criminal mischief.

The Superior Court sentenced him as an habitual offender to a total of 66 years imprisonment, to

be followed by probation. *See Reed v. State*, 2004 WL 439802, at **1 (Del. Mar. 2, 2004).   The

Delaware Supreme Court affirmed Reed's convictions and sentences on direct appeal. *Reed v. State*, 2002 WL 1358062 (Del. June 21, 2002).

In March 2003, Reed  filed a *pro se* motion for state post-conviction relief under Delaware Superior Court Criminal Rule 61, asserting that his counsel provided ineffective assistance because: (1) he did not have enough time to properly investigate Reed's "story"; (2) he did not have enough time to conduct independent forensic testing of the physical evidence; (3) he failed to communicate with Reed prior to trial or visit Reed at the prison, and he did not respond to Reed's letters; (4) he failed to file a motion to suppress Bounds' identification of Reed; (5) he did not make any effort to develop any mitigating factors that would have reduced his sentence; (6) he should not have allowed Reed to testify at trial; and (7) he did not locate and speak with any of the witnesses.  *State v. Reed*, 2003 WL 22853417, at *1-2  (Del. Super. Ct. Aug. 6, 2003). The Superior Court denied his Rule 61 motion as meritless.  *Id*.  The Delaware Supreme Court affirmed the Superior Court's judgment.  *Reed,* 2004 WL 439802, at **1.

In May 2004, Reed filed in this court a *pro se* petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254, and thereafter filed a memorandum in support of his petition.  (D.I. 1; D.I. 9.)

The State has filed an answer asking the court to dismiss Reed's federal habeas petition. (D.I. 14.)   Reed's § 2254 petition is ready for review.

## III.  GOVERNING LEGAL PRINCIPLES

### A.  The Antiterrorism and Effective Death Penalty Act of  1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206

(2003)(internal citations and quotation marks omitted).  Pursuant to AEDPA, a federal court may

consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas

petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see*

*Woodford,* 538 U.S. at 206.

### B.  Exhaustion and Procedural Default

One procedural requirement imposed by AEDPA is that, absent exceptional

circumstances, a federal court cannot grant federal habeas relief unless the petitioner has

exhausted all means of available relief under state law.  28 U.S.C. § 2254(b); *O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).   AEDPA

states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the
>       applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to

give "state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claim was "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "'Fair presentation' of a claim means that the petitioner 'must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'" *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004)(citing *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)).

However, a petitioner's unexhausted claims will be considered exhausted if "the court to which the petitioner would be required to present his claims in order to the meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 733 n.1 (1991); *see Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001). Although such claims are considered exhausted, they are "procedurally defaulted for the purposes of federal habeas relief." *Coleman*, 501 U.S. at 733 n.1; *Lines,* 208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are deemed exhausted but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263 (1989); *Werts*, 228 F.3d at 192.

A federal court may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the

claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51; *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### C. Standard of Review Under AEDPA

Pursuant to AEDPA, if a state court adjudicated the merits of federal habeas claim, then the federal habeas court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

6

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  A claim is considered to have been  "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolv[es] the parties claims, with *res judicata* effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), *reversed on other grounds by Rompilla v. Beard*, – U.S. – , 125 S.Ct. 2456  (2005).

AEDPA also requires a federal court to presume that the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).  This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV.  DISCUSSION

Reed's petition and supporting memorandum assert five grounds for relief: (1) the prosecutor's contact with the jury pool prior to trial violated his Sixth Amendment and due process rights; (2) Reed requested, but was not provided, an attorney at the time of his arrest; (3) the victim, who could not identify Reed at trial, should not have been permitted to testify; (4) there was insufficient evidence presented at trial to sustain a conviction; and (5) defense counsel was ineffective at every stage of the proceedings, including Reed's appeal.  (D.I. 9.)

## A. Claim One: Jury Bias

Immediately before the jury was selected for Reed's trial, the prosecutor informed the trial judge and defense counsel that, the previous week, she had been part of the same jury venire from which the court was about to pick Reed's jury panel. *See Reed*, 2002 WL 358062, at **1. Defense counsel objected to going forward with the same jury panel. The prosecutor responded that she had only been called in for one day of jury orientation and that she had briefly discussed non-legal matters with one member of the venire which did not include any facts about Reed's upcoming trial. Defense counsel continued to object to proceeding with the jury panel because they had seen the prosecutor as a juror, and now they would see her as a prosecutor trying to convict the defendant.

The Superior Court judge decided to proceed with the jury selection. However, in addition to the standard *voir dire*, he decided to ask the jury panel members some special questions to "flush out" any concerns any juror may have with respect to the prosecutor's inclusion in the jury orientation. Again, defense counsel objected, arguing that these questions would characterize the prosecutor as the "good guy," and also that there was the "appearance of impropriety" in having had the prosecutor on the same jury panel. The Superior Court judge did not agree that there was any appearance of impropriety. After the standard *voir dire* questions, the judge made the following statement to the panel:

> As the jury clerk said, Ms. Stephanie Tsantes is the prosecutor in this case. Ms. Tsantes is also a resident in Sussex County. And like each and every one of you, Ms. Tsantes also received a summons to appear for jury duty last week. And like all of you, she showed up.

> Because Ms. Tsantes is a prosecutor, she is not eligible to sit as a juror in a criminal case; however, she can sit as a juror in a civil case, and that's why she was here

8

last week. And like all of you, she sat through jury orientation. You may or may not have seen her. You may or may not have talked to her. But I want to be sure of the fact that if you did see her or if you did talk to her, if it would affect your ability to be fair and impartial in any way in this case, that you come up and tell me.

So if that's the case, if the fact that any of you saw or talked to Ms. Tsantes last week during the jury orientation, or any of the other related jury proceedings, would impair your abiltiy to be fair and impartial in this case, I would like you to come up and tell me that. If anybody feels that way, I would like you to come on up.

(D.I. 16, State's Ans. Br. in *Reed v. State*, No. 641, 2001, at 9-10.). None of the potential jurors responded that it would impair their impartiality.

In his direct appeal, Reed argued that the Superior Court violated his right to due process and a fair trial by refusing to replace the prosecutor[1] or grant a continuance. Reed alleged that the appearance of impropriety was so egregious that it created a presumption of inherent prejudice. The Delaware Supreme Court applied Delaware precedent and rejected this argument, finding that facts in this case "do not rise to the level of 'egregious circumstances' required for us to presume prejudice." *Reed*, 2002 WL 1358062, at **1. The state court also determined that Reed did not meet his burden of establishing actual prejudice because the "trial judge's *voir dire* question and the venire's response, or lack thereof," demonstrated that there was no "actual knowledge that [the prosecutor's] standing rose as a result of her presence among the venire." *Id.*

The first claim in Reed's habeas petition reiterates his claim on direct appeal that the prosecutor's participation as a member of the jury panel tainted the jury pool in violation of his Sixth Amendment and due process rights. Even though the Delaware Supreme Court applied Delaware precedent in denying this claim, the state supreme court adjudicated the claim on its merits for the purposes of federal habeas review. *See Rompilla,* 355 F.3d at 247. Thus, the court

---

[1]There is no indication that Reed ever requested a prosecutorial replacement.

must apply § 2254(d)(1)'s deferential standard of review and determine if the Delaware Supreme Court's decision was either was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

The federal precedent governing the issue as to when a third party's contact with a jury in a criminal trial violates a defendant's right to an impartial jury is *Remmer v. United States*, 347 U.S. 227 (1954) and *Smith v. Phillips*, 455 U.S. 209 (1982). *See United States v. Console*, 13 F.3d 641, 666 (3d Cir. 1993)(discussing the circumstances warranting the application of *Remmer*'s presumption of prejudice and those situations warranting *Smith*'s actual prejudice analysis). Pursuant to *Remmer*, if the allegations of jury bias involve a third party's contact with a juror during a trial about the matter pending before the jury, the contact is deemed presumptively prejudicial to the defendant. *Remmer*, 347 U.S. at 229. The trial court must conduct a hearing to "determine the circumstances, the impact thereof upon the juror, and whether or not [the contact] was prejudicial, in a hearing with all interested parties permitted to participate." *Id.* at 230. The government has the burden of rebutting the presumption by showing that the "contact with the juror was harmless to the defendant," and "[i]f after [the] hearing [the incident] is found to be harmful," the trial court should grant a new trial. *Id.* at 229-30. In the Third Circuit, *Remmer*'s rebuttable presumption only applies in those cases involving a "direct communication [about the matter pending before the jury] between a juror and a third party during deliberations." *United States v. Console*, 13 F.3d 641, 666 (3d Cir. 1993).

When the jury bias claim does not involve contact with a juror during a trial about a matter pending before the jury, then the *Remmer* presumption does not apply. *Console*, 13 F.3d

at 666; *see Smith*, 455 U.S. at  215, 217-18.  Although the trial court must still conduct a post-conviction hearing regarding the jury taint allegations, a new trial will only be warranted if the defendant proves that he was actually prejudiced by the improper contact. *Smith*, 455 U.S. at 215, 217-18 .

In short, once jury partiality allegations are made, both *Remmer* and *Smith* require a hearing in order to determine the effect any improper jury contact had on the defendant's trial. *See Smith*, 455 U.S. at 215 (stating that "[t]his Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."). The difference, however, is that when *Remmer* applies, the government must prove that the contact was harmless in order to avoid a re-trial, and when *Smith* applies, the defendant must prove that he was actually prejudiced by the contact in order to get a re-trial.

Reed's argument is two-fold: (1) the Delaware Supreme Court erred in failing to conclusively presume prejudice in his situation; and (2) the Delaware Supreme Court erred in failing to find that he was actually prejudiced by the alleged jury bias.  The court will address these allegations separately to determine if the Delaware Supreme Court's rejection of Reed's jury bias claim was either contrary to, or an unreasonable application of, *Remmer* and *Smith*.[2]

A state court decision is contrary to the Supreme Court's clearly established precedents if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).   A state court decision is an unreasonable

---

[2]To the extent Reed argues that the Delaware Supreme Court violated Delaware state law in refusing to conclusively presume prejudice, and in failing to find actual prejudice, this alleged violation of state law is not cognizable on federal habeas review. 28 U.S.C. § 2254(a);  *Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991);  *Smith v. Phillips*, 455 U.S. 209, 211 (1982).

application of the Supreme Court's clearly established precedents "if the state court identifies the

correct governing legal principle from the [Supreme Court's] decisions but unreasonably applies

that principle to the facts" of the petitioner's case. *Id.* at 413.

Here, because neither *Remmer* nor *Smith* mandates the application of a conclusive

presumption of prejudice, the Delaware Supreme Court's failure to presume prejudice does not

warrant relief under § 2254(d)(1).[3]  *Remmer*'s rebuttable presumption of prejudice also does not

apply to Reed's case because the challenged third party contact did not involve the matter

pending before the jury and did not occur during the jury deliberations. *See U.S. v. Lloyd* , 269

F.3d 228, 238 (3d Cir. 2001); *Console*, 13 F.3d at 666.   Rather, given the particular jury bias

claim here, all that Reed's right to due process required was a *Remmer*/*Smith* type of hearing and

an opportunity to establish actual prejudice.  Thus, the Delaware Supreme Court's refusal to

conclusively presume prejudice, or even to apply a rebuttable presumption of prejudice, was

---

[3]In reaching this conclusion, the court acknowledges Justice O'Connor's separate concurrence in *Smith*, in which she expressed her view that implied bias should be conclusive and a new trial ordered in three "extreme situations":

> [where] the juror is an actual employee of the prosecuting agency, [where] the juror is a close relative of the one of the participants in the trial or the criminal transaction, or [where] the juror was a witness or somehow in the criminal transaction."

*Smith*, 455 U.S. at 222.  If the facts do not constitute an extreme situation, then the trial court must conduct a post-conviction hearing and the defendant bears the burden of proving actual prejudice. *Id.*  Even if a concurring opinion could constitute clearly established federal law for § 2254(d)(1) purposes, the circumstances of Reed's case do not fall within any of Justice O'Connor's examples.  The prosecutor was not an actual juror, nor was she even a viable potential juror in Reed's jury; due to her employment status, she could not have served on Reed's criminal jury.  Further, unlike the three extreme situations described by Justice O'Connor, Reed's situation involved "attempts of [a] third part[y] to influence a juror" rather than actual juror misconduct. *Id.*

neither contrary to, nor an unreasonable application of, *Remmer* and *Smith*.[4]

The court must next determine whether the Delaware Supreme Court's conclusion that Reed failed to demonstrate actual prejudice warrants relief under § 2254(d)(1). To determine the appropriate parameters of an actual prejudice inquiry, the court turns to the *Smith* decision.

The allegations of juror partiality in *Smith* were based on the fact that a deliberating juror had applied for an investigator position with the District Attorney's Office during the defendant's trial, and that, despite knowing this fact, the prosecution did not disclose the information until after defendant was found guilty. The defendant eventually applied for federal habeas relief, contending that he had been denied due process of law. Although the District Court concluded that the defendant could not establish actual prejudice, the court imputed bias and granted federal habeas relief. The United States Court of Appeals for the Second Circuit affirmed the decision by a divided vote. *Smith*, 455 U.S. at 214. The Supreme Court reversed the Second Circuit's decision because a *Remmer*-type hearing had failed to uncover actual prejudice stemming from

---

[4]The fact that the Delaware Supreme Court applied Delaware precedent in refusing to presume prejudice and in requiring Reed to demonstrate actual prejudice does not affect this court's conclusion that the instant claim does not warrant relief under § 2254(d)(1). In Delaware, a court must make a threshold inquiry to determine if the improper contact/influence with the jury constituted an inherently egregious circumstance. *Hughes v. State*, 490 A.2d 1034, 1043 (Del. 1985) (a new trial is warranted "only if the error complained of resulted in actual prejudice or so infringed upon defendant's fundamental right to a fair trial as to raise a presumption of prejudice"). If improper contact constitutes an egregious circumstance, then the court must conclusively presume prejudice and order a new trial. *Id.*; *Massey v. State*, 541 A.2d 1254, 1257-58 (Del. 1988)(where the issue of juror intimidation arose during the trial). However, if the defendant fails to establish egregious circumstances warranting a presumption of prejudice, then a new trial will only be necessary if the defendant demonstrates actual prejudice resulting from the alleged jury taint. *Massey*, 541 A.2d at 1259.

In Reed's case, even though the Delaware Supreme Court did not discuss whether *Remmer*'s rebuttable presumption applied, the Delaware Supreme Court ended up applying the correct actual prejudice analysis required by *Remmer* and *Smith*. Thus, its decision was neither contrary to, nor an unreasonable application of, clearly established federal law.

13

the misconduct, noting that "[t]his Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Id.* at 215, 217-18. The Supreme Court stated that "the prosecutor's failure to disclose Smith's job application, although requiring a post-trial hearing on juror bias, did not deprive respondent of the fair trial guaranteed by the Due Process Clause." *Id.* at 221.

Although, in *Smith,* the Supreme Court contemplated a post-trial hearing to determine actual bias, the Court has noted that "[t]he adequacy of any remedy is determined solely by its ability to mitigate constitutional error, if any, that has occurred." *Rushen v. Spain*, 464 U.S. 114, 120 (1983). As such, when the allegation of jury taint arises pre-verdict, "the trial court has wide discretion to fashion an appropriate procedure for assessing whether the jury has been exposed to substantively damaging information, and if so, whether cognizable prejudice is an inevitable concomitant of that exposure." *United States v. Bradshaw*, 281 F.3d 278, 290 (1st Cir. 2002). It is well-settled that "*voir dire* provides a means of discovering actual or implied bias." *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 143 (1994); *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 554 (1984); *U.S. v. Ferri*, 778 F.2d 985, 993 (3d Cir. 1985)(internal citations omitted)(stating that "*voir dire . . .* usually identifies bias").

In the instant situation, the alleged jury taint occurred prior to the actual trial and prior to jury selection. The Superior Court therefore had wide discretion in determining how to assess the effect of the prosecutor's inclusion in the initial jury pool. During *voir dire*, the trial judge explained the situation and asked the potential jury members if they believed they could be impartial under the circumstances. No juror claimed an inability to remain impartial. The judge then excused the one potential juror who had actually spoken with the prosecutor. Further, as

14

explained by the Delaware Supreme Court, Reed's claim that the prosecutor's limited contact with panel members would enhance her standing with the jury was mere speculation, which, at most, raised an issue of potential bias rather than actual bias.   In these circumstances, the court concludes that the Superior Court's special *voir dire* satisfies the *Smith/Remmer* hearing requirement.

Additionally, consistent with Supreme Court precedent, the Superior Court judge established the jury's impartiality during *voir dire*.  The court must presume this finding to be correct absent a showing of clear and convincing evidence to the contrary.  28 U.S.C. § 2254 (e)(1); *Patton v. Yount*, 467 U.S. 1025, 1036 (1984); *Wainwright v. Witt*, 469 U.S. 412, 429 (1985).   Reed has not provided any evidence rebutting the trial court's determination of the jury's impartiality, nor has he even alleged that any juror misrepresented his or her ability to remain impartial when questioned by the trial judge.  Accordingly, the court finds that the Delaware Supreme Court's decision affirming Reed's conviction due to his failure to prove actual bias does not warrant federal habeas relief under § 2254(d)(1).

### B. Claims Two, Three, and Four are Procedurally Barred from Federal Habeas Review

The State correctly asserts that Reed did not exhaust state remedies for claims two, three, and four, and that these claims are procedurally defaulted because he cannot obtain further state court  review for them.[5]   Accordingly, the court can only review these claims upon a showing of

---

[5]First, Rule 61(i)(1) would bar Reed from raising these claims in a new Rule 61 motion because more than three years have passed since his judgment of conviction became final. *See* Del. Super. Ct. Crim. R. 61(i)(1)(imposing three-year period in which to timely file a Rule 61 motion).   Second, because Reed did not raise these three claims in his 2003 post-conviction proceeding, Delaware Superior Court Criminal Rule 61(i)(2) would bar him from raising the claims in a new Rule 61 motion unless warranted in the interest of justice. *See* Del. Super. Ct.

cause for the procedural default and prejudice resulting therefrom, or that a miscarriage of justice will result if the court refuses to hear the claims.

Reed attempts to establish cause for his procedural default by alleging that defense counsel was ineffective at "every stage of the proceedings," and he specifically faults defense counsel for failing to investigate and find the two other people he claims committed the crime. (D.I. 9; D.I. 18.)  An attorney's ineffective assistance, however,  will only constitute cause for a procedural default if the petitioner: (1) exhausted state remedies for the ineffective assistance of counsel claim by presenting it as an independent constitutional claim to the state courts; and (2) the attorney actually provided constitutionally deficient assistance. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *Murray v. Carrier*, 477 U.S. 478, 488-89(an allegation of constitutionally ineffective assistance of counsel as cause for a procedural default in state court must itself be independently exhausted).

Reed argues that his counsel provided ineffective assistance in his direct appeal by failing to explain the appeal process and by failing to present "a number of good issues" proposed by Reed.  Although Reed asserted this claim in his Rule 61 motion before the Superior Court, he did not present this issue to the Delaware Supreme Court in his post-conviction appeal.  (D.I. 16, Appellant's Op. Br. in *Reed v. State*, No. 422,2003.)  Consequently, Reed's allegation regarding his appellate counsel's ineffective assistance is itself procedurally defaulted and cannot constitute cause.  Further, as explained *infra* at 17-27,  Reed's contention that his counsel provided ineffective assistance during the investigatory pre-trial and trial stages of his proceeding, is

---

Crim. R. 61(i)(2).  Finally, Reed's second and third claims would be subject to the procedural bar of Rule 61(i)(3) because he failed to raise these claims in the proceedings leading to the judgment of conviction.

meritless. In short, neither of these ineffective assistance of counsel claims can excuse Reed's procedural default of claims two, three, and four.

Reed also attempts to establish cause by asserting that he was denied access to a law library and access to trained individuals who could have helped him with the state post-conviction procedures and federal habeas procedures. (D.I. 18 at 2.) Inmates do not have an unrestricted right to a law library or legal assistance; they are only entitled to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Here, Reed has not provided support for his contention that he was denied complete access to the law library. Thus, his conclusory allegations fail to demonstrate that the alleged "shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.*

Reed's failure to demonstrate cause obviates any need to reach the issue of prejudice. *See Smith v. Murray,* 477 U.S. 527, 533 (1986). Moreover, his unsupported and conclusory allegation that he is "actually innocent" fails to satisfy the miscarriage of justice exception to the procedural default doctrine. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004)(holding that, in order to establish actual innocence sufficient to demonstrate a miscarriage of justice, a petitioner must assert "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial."). Thus, because Reed has failed to provide any reason to excuse his procedural default of claims two, three, and four, the court will dismiss these claims.

### C. Claim Five: Ineffective Assistance of Counsel

Reed's final habeas claim asserts that his trial counsel, Thomas Barnett, Esq., was

17

ineffective because he:  (1) failed to investigate, locate, and speak with potential witnesses,

especially the two witnesses present during the January 25, 2001 incident; (2) had an inadequate

39-day period to prepare Reed's case;  (3) failed to produce or investigate any mitigating

information about Reed's background; (4) failed to consult with him before trial; (5) failed to

move to suppress Reed's statements to the police; (6) allowed  Reed to testify at trial; (7) failed

to inform Reed about the issues raised in his direct appeal and failing to inform Reed about the

outcome of the direct appeal until six months after it was decided; and (8) failed to challenge the

prosecution's case.[6]  (D.I. 9.)   The State correctly asserts that the Delaware Supreme Court

denied the claim on the merits.  Thus, the court cannot grant federal habeas relief unless the

Delaware Supreme Court's decision either was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the United States Supreme

Court.  *See* 28 U.S.C. § 2254(d)(1).

The "clearly established Federal law" which governs ineffective assistance of counsel

claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984)

and its progeny.  *See Wiggins v. Smith*, 539 U.S. 510 (2003).  To prevail on a claim of ineffective

assistance of counsel, a petitioner must demonstrate both that: (1) counsel's performance fell

below an objective standard of reasonableness; and (2) counsel's deficient performance actually

prejudiced the petitioner's case; in other words,  but for counsel's unprofessional errors, the

result of the proceeding would have been different. *Strickland*, 466 U.S. at 668, 687-88, 692-94;

---

[6]The State's answer identifies an additional claim as being raised by Reed, namely, that
Barnett was ineffective for permitting Bounds to make an in-court identification of him.
However, the court has reviewed Reed's lengthy discussion of his claims and has not found this
claim in either Reed's original petition or his supplemental petition.  (D.I. 1; D.I. 9.)
Consequently, the court will not address the claim.

18

*Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996). In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260; *Dooley*, 816 F.2d at 891-92. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

In the instant situation, the Delaware state courts correctly identified and applied the two-prong *Strickland* standard to Reed's ineffective assistance of counsel claim.[7] Thus, the Delaware Supreme Court's denial of this claim was not "contrary to" clearly established Federal law. *Williams*, 529 U.S. at 406 (holding that when a "run-of-the-mill state-court decision applie[s] the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case," the decision is not "contrary to" that precedent.).

The court's inquiry under § 2254(d)(1) is not over, however, because it must also determine whether the state court's rejection of Reed's ineffectiveness claim involved an "unreasonable application of" *Strickland*. *See* 28 U.S.C. § 2254(d)(1). Under the unreasonable application prong, a federal habeas court must objectively evaluate the state court decision on the merits and determine whether the state court reasonably applied the correct rule to the specific facts of the petitioner's case. *See Williams*, 529 U.S. at 409, 412-13; *Matteo*, 171 F.3d at 891.

---

[7]As explained *infra* at 22, if Reed's allegation that 39 days did not provide Barnett with enough time to prepare his defense is an attempt to trigger one of the narrow exceptions to *Strickland*'s actual prejudice requirement, it fails. *See Cronic*, 466 U.S. at 658-62 (in certain circumstances, a court may presume a counsel's ineffectiveness without reviewing his performance). Accordingly, because *Cronic* does not apply, the state courts properly analyzed Reed's claim under *Strickland*.

Several of Reed's numerous ineffective assistance allegations stem from his version of

the facts.  As stated by the Superior Court in his post-conviction proceeding:

> Reed's "story" is that he met two acquaintances, Crystal Cephas, a white female, and Andrew "Stank" Johnson, a black male, outside a store in Concord on January 25, 2001.  Crystal and Stank asked Reed if he wanted to go for a ride.  Reed said that he did and the three of them got into a car and drove to Bounds' house in Delmar.  Reed claimed not to know Bounds.  Crystal went into Bounds' home, while Reed and Stank stayed outside.  Reed walked to a nearby steel business to get an employment application.  Upon his return, Reed and Stank went to Bounds' backdoor.  Bounds and Crystal came outside and, after a brief discussion between Bounds and Crystal about money, Reed, Bounds, and Crystal, with Reed driving Bounds' car, went to Bounds' bank.  Stank followed in the car that the three had taken to Bounds' house.  Upon their arrival at the bank, Crystal got out of the car to go to the bathroom.  Reed and Bounds went through the drive-in and cashed Bounds' check.  Reed then picked up Crystal and drove to Concord, where Stank met them.  Reed got out of the car and Crystal and Bounds drove off.  Reed denied taking any money from Bounds and he denied going back to Bounds' house on January 29, 2001.  Reed testified that he was merely supposed to meet Stank and Crystal at the Food Lion Shopping Center that day.

*Reed*, 2003 WL 22853417, at *2.  The court will discuss Reed's numerous allegations as grouped

below.

> *1. Improper investigation of Reed's case, potential witnesses, alibi, and*
> *mitigating evidence due to inadequate amount of time to investigate the case*

Reed alleges that Barnett did not have enough time to investigate his case.  Reed also

alleges that Barnett did not properly investigate his case because he failed to: (1) secure Crystal

and Stank as witnesses for trial; (2) investigate Reed's alibi; and (3) investigate and produce

mitigating background evidence at the sentencing phase.

In the instant situation, the Public Defender's office handled Reed's case in the

beginning, and Barnett was appointed as conflict counsel 39 days before the scheduled trial.

During Reed's state collateral proceedings, although Barnett stated that "this short amount of

time to prepare for Trial caused some problems with the case," he also stated that "most of the

20

initial investigation had been completed prior to the case being assigned to Trial Counsel from

the Public Defender's Office." (D.I. 16, Ex. B-185 in State's App. to Ans. Br. in *Reed v. State*,

No. 422,2003). Barnett used the existing Public Defender's file as a starting point for his

investigation, and he also attempted to to locate and subpoena Crystal and Stank by his own

efforts. (D.I. 16, Ex. B-152 in State's App. to Ans. Br. in *Reed v. State*, No. 422,2003). He

spoke to Stank's probation officer, obtained a photograph of Stank, and subpoenaed Stank at his

last known address in Delaware. After discovering that Stank had fled to Virginia because of a

capias, Barnett located a post office address for Stank in Jamesville, Virginia, as well as a

telephone number in Chesapeake, Virginia. His attempts to find Stank or talk to him at these

locations, however, failed.

As for Crystal, Barnett could not uncover her exact whereabouts, but he did find out that

she was believed to be incarcerated in either Maryland or Virginia.

Viewing the record as a whole, the court concludes that Barnett's attempts to locate Stank

and Crystal were objectively reasonable, as was his reliance on the Public Defender's file. The

court cannot perceive, and Reed does not identify, any other methods Barnett could have

employed that may have been more successful in locating Crystal and Stank. Further, there was

no evidence linking Crystal and Stank to the crimes except Reed's own story.[8] Bounds testified

at trial that only one individual came to his home on January 25, 2001 and again on January 29,

2001. The bank teller only saw one other person in Bounds' car. The bank's surveillance

camera only photographed Bounds and Reed, and finally, Reed was arrested alone. Thus, the

---

[8]Reed contends that Crystal and Bounds were engaged in a sex-for-money relationship,
and that he accompanied Crystal and Stank to Bounds house in order for Crystal to obtain
payment for her services.

court concludes that Barnett's investigation of Reed's case was objectively reasonable.

Reed also cannot satisfy *Strickland*'s actual prejudice requirement.  When a petitioner alleges that counsel failed to investigate his case, prejudice is demonstrated by showing what a "proper" investigation would have produced and that the information would have ended in a different result.  *U.S. v. Askew*, 88 F.3d 1065, 1073 (C.A.D.C. 1996); *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987).  Reed, however, does not explain what a proper investigation of the potential witnesses/alibi would have involved.   Given the absence of any other corroboration of Reed's story, there is no indication that further investigation would have ended in a different result.

Moreover, even though Reed argues that Barnett could not have properly investigated the case in the 39-day period afforded by the trial court, the 39-day preparation time does not trigger one of the narrow exceptions to *Strickland*'s actual prejudice requirement.  In *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court identified three situations in which the ineffectiveness of counsel is "properly presumed without inquiry into actual performance of trial": (1) where the accused is denied the presence of counsel at a critical stage; (2) where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) where the circumstances are such that it is unlikely that any lawyer could have provided effective assistance.  *Cronic*, 466 U.S. at 658-62;  *Bell v. Cone*, 535 U.S. 685, 696-97 (2002).  The Supreme Court has refused to fashion a *per se* rule presuming ineffectiveness based solely on the amount of time defense counsel had to prepare for trial.  *Cronic,* 466 U.S. at 661-62.  Rather, to determine if counsel is presumptively ineffective, a court must determine whether "the surrounding circumstances made it so unlikely that any lawyer could provide effective

assistance," paying particular attention to the following five criteria: (1) the time afforded for investigation and preparation; (2) the experience of counsel; (3) the gravity of the charge; (4) the complexity of possible defenses; and (5) the accessibility of witnesses to counsel. *Id*. at 654, 661-62.

In the instant case, the Superior Court noted that neither the allegations against Reed nor his defense were complex. Reed told Barnett that Crystal and Stank committed the crimes, and Barnett investigated this story. Although the Superior Court denied Barnett's request for a continuance, there is no indication that a continuance would have rendered further attempts more successful. Reed fails to identify any further evidence Barnett would have discovered if he had been granted more time. As the Superior Court observed, "short of having Stank and Crystal appear at trial and confess, it is not apparent to me what any other further investigation of this matter would have accomplished." *Reed*, 2003 WL 22853417, at *2.

Accordingly, because it is not appropriate to presume Barnett's ineffectiveness based on the amount of time he had to prepare, and Reed has failed to satisfy *Strickland*'s two-pronged test, federal habeas relief is not warranted.

Finally, Reed's contention that Barnett failed to make any effort to produce/investigate mitigating information about his background also fails to satisfy *Strickland*'s test. During Reed's state collateral proceedings, Barnett responded to this allegation by stating "[t]rial counsel believed the Presentence Report adequately addressed the problems Mr. Reed experienced throughout his life, none of which were believed to raise issues that would require a psychiatric examination. As to the sentence, Mr. Reed faced a mandatory habitual sentence as a result of his prior convictions." (D.I. 16, Ex B-152 in State's App. to Ans. Br. in *Reed v. State*, No.

422,2003).  Reed does not contend that his habitual status determination was in error.  He also

does not argue, and the record does not reveal, that the pre-sentence report contained information

indicating that Barnett's failure to investigate such background facts was objectively

unreasonable.  *Cf. Rompilla v. Beard*, 125 S.Ct. 2456, 2465  (2005)(holding that defense

counsel's failure to examine petitioner's prior conviction file was objectively unreasonable given

that defense counsel knew that the prosecution's proposed argument for the death penalty relied

on the severity of petitioner's prior crimes); *Wiggins v. Smith*, 539 U.S. 510, 527-28

(2003)(holding that when a court assesses the reasonableness of an attorney's investigation, the

court must consider whether known evidence would lead a reasonable attorney to investigate

further).   Thus, the court concludes that Reed's unsupported statement fails to demonstrate that

the Delaware Supreme Court's rejection of this assertion was contrary to, or an unreasonable

application of, *Strickland*.

> *2.  Trial counsel failed to effectively communicate with Reed prior to trial, failed to keep him apprised of the status of the case, never visited Reed, and never answered Reed's letters*

Reed alleges that Barnett provided ineffective assistance because Barnett did not answer

any of  his letters and failed to communicate or visit with him prior to trial.  The Superior Court

concluded that Reed's contention regarding the letters was unsupported by the record, and that

his allegation regarding Barnett's failure to visit or communicate with him did not establish

ineffective assistance.

After reviewing the record, the court concludes that the Delaware Supreme Court's

affirmance of the Superior Court's decision regarding this claim was neither contrary to, nor an

unreasonable application of, *Strickland*.  The only letter from Reed to Barnett in the record

concerns his appeal, not his criminal trial. During Reed's post-conviction proceedings, Barnett specifically denied that Reed sent him letters prior to trial. Reed did not produce copies of any such letters to the state courts, nor has he presented any such letters in the instant habeas proceeding.

Second, Reed's claim that Barnett never met with him at the prison is unavailing because Reed cannot demonstrate the prejudice required by *Strickland*. In Reed's post-conviction proceedings, Barnett stated that he reviewed the Public Defender's file and that he discussed the evidence with Reed at the case review. The Superior Court noted that, based on Barnett's performance at trial and a review of the transcript, Barnett "was well acquainted with both Reed's 'story' and the State's evidence." *Reed*, 2003 WL 22853417, at *3. Considering that Reed has not indicated what, if any, information Barnett would have uncovered if he had visited or communicated with Reed more often, he has failed to demonstrate any prejudice.

Accordingly, the court finds that the Delaware Supreme Court's denial of these claims does not warrant federal habeas relief under § 2254(d)(1).

### 3. Failing to file a motion to suppress Reed's statements to the police

Reed argues that both his pre-trial Public Defender and Barnett failed to file a motion to suppress statements Reed made to the police after his arrest. Once again, Reed cannot show the prejudice required by *Strickland*.

Reed contends that his counsel should have filed the motion to suppress his police statements because the police continued to question him after he invoked his right to counsel. However, the only portion of Reed's custodial statement that was introduced into evidence during the State's case-in-chief was through the testimony of Officer Ronald Hagan. Hagan

25

testified that the police read Reed his *Miranda* rights, after which Reed asked why he was being read these rights and that he understood them.  Hagan also stated  that Reed told him that he was staying in New Jersey but that he came to Delaware to visit an acquaintance who worked at the pharmacy in the shopping center.

After the State rested its case, Reed testified that he accompanied Stank and Crystal to Bounds' home and drove Bounds to the bank.  It was only after this testimony that the substance of his statements to the police was admitted as evidence.  Even if the portions of Reed's statements to the police made after he invoked his right to counsel had been suppressed, those statements would still have been admissible to impeach Reed's credibility once took he the stand and testified as to his version of the facts.  *See Harris v. New York*, 401 U.S. 222 (1971).   Thus, because these statements would have been admissible despite defense counsel's alleged failure to file a pre-trial suppression motion, the Delaware Supreme Court's denial of this claim does not warrant federal habeas relief.

*4. Ineffective assistance for allowing Reed to testify at trial*

Reed argues that Barnett should not have allowed him to testify at trial.  It is well-settled that the defendant makes the decision to testify during a criminal trial, not the defendant's attorney.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983)(the defendant has the "ultimate authority to make certain fundamental decisions regarding the case, [such as] . . . whether to . . . testify in his or her own behalf.")  Barnett told Reed about the consequences of testifying or not testifying at trial, and Reed decided to go ahead and testify.  *Reed,* 2003 WL 22853417, at *4. Barnett's action was not objectively unreasonable, thus, Reed has failed to satisfy the performance prong of *Strickland*.

26

> 5. *General allegation that Barnett failed to challenge the prosecution's*
> *case, resulting in a denial of the basic adversarial process*

Finally, Reed contends that Barnett's failure to challenge the prosecution's case resulted

in a denial of the basic adversarial process under *Cronic*.  *See Cronic*, 466 U.S. at 659-62.  To the

extent this allegation is Reed's attempt to establish a constructive denial of counsel due to all of

Barnett's alleged deficiencies, thereby requiring the court to presume that Barnett rendered

ineffective assistance, it fails.  As stated by the Supreme Court, "[w]hen we spoke in *Cronic* of

the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case,

we indicate that the attorney's failure must be complete."  *Bell*, 535 U.S. at 696-97.  Here,

Barnett's alleged failures neither individually nor cumulatively trigger *Cronic*'s presumption of

prejudice because Reed has not demonstrated that Barnett failed "to function in any meaningful

sense as the Government's adversary."  *Cronic*, 466 U.S. at 666.  The court will therefore deny

this claim as meritless.

**E.  Motion for Evidentiary Hearing and Motion to Appoint Counsel**

Reed filed a motion asking the court to hold an evidentiary hearing and a motion asking

the court to appoint counsel.  (D.I. 21; D.I. 23.)  The court will deny Reed's request for an

evidentiary hearing because he developed the factual basis of his claims in his state court

proceeding.  *See* 28 U.S.C. § 2254(e)(2).  The court will also deny Reed's third motion for

appointment of counsel for the same reasons discussed in the court's order dated  February 9,

2005 (D.I. 19) denying his prior two motions for such appointment.

**F.  Motion to Amend Petition**

Reed filed a motion to amend his habeas petition to include certain state and federal

caselaw. (D.I. 26.)  The court will grant this motion.  However, the amendment does not alter the court's decision to deny Reed's petition.

## V.  CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2.  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)

The court concludes that Reed's habeas claims do not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be unreasonable.  Consequently, the court declines to issue a certificate of appealability.

## VI.  CONCLUSION

For the reasons stated, Reed's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied.  An appropriate order shall issue.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

JEROME B. REED,                              )
                                             )
            Petitioner,                      )
                                             )
    v.                                       )        Civ. A. No. 04-326-GMS
                                             )
THOMAS CARROLL, Warden,                      )
                                             )
            Respondent.                      )

## ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

1. Jerome B. Reed's petition for the writ of habeas corpus, filed pursuant to 28 U.S.C §

2254, is DISMISSED, and the relief requested therein is DENIED.   (D.I. 1; D.I. 9.)

2. Reed's motion for an evidentiary hearing is DENIED.  (D.I. 21.)

3. Reed's motion for appointment of counsel is DENIED.  (D.I. 23.)

4. Reed's motion to amend his petition is GRANTED.  (D.I. 26.)

5. The court declines to issue a certificate of appealability.


Dated: August 26, 2005

UNITED STATES DISTRICT JUDGE